IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

KEVIN COLEMAN,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Cv. No. 2:19-cv-02092-SHM-tmp
Cr. No. 2:15-cr-20280-SHM-01

**ORDER DENYING MOTION FOR SUPPLEMENTATION**
**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**AND**
**ORDER DENYING LEAVE TO PROCEED** *IN FORMA PAUPERIS* **ON APPEAL**

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 1) and the Motion for Additional Supplementation (ECF No. 10) filed by Movant, Kevin Coleman, Bureau of Prisons ("BOP") register number 28651-076, an inmate at the Federal Correctional Institution ("FCI Yazoo") in Yazoo City, Mississippi. The Motion for Additional Supplementation is **DENIED**.[1]

---

[1] Movant seeks to add a claim that he is no longer a career offender under *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019). *Havis* provides no relief on collateral review. *Bullard v. United States*, 937 F.3d 654, 656 (6th Cir. 2019). *See Gamble v. United States*, No. 16-02527, 2020 WL 475832, at *13-15 (W.D. Tenn. Jan. 29, 2020) (denying as futile Gamble's proposed amendment to his § 2255 motion asserting a claim based on *Havis* "because the argument he seeks to make does not give rise to a cognizable § 2255 claim."); *Dubose v. United States*, No. 1:16-cv-01250-JDB-jay, 2020 WL 53561, at *3 (W.D. Tenn. Jan. 3, 2020) (dismissing Dubose's § 2255 claim based on *Havis* because it "challenges the Court's application of the advisory Guidelines" and is therefore non-cognizable).

On March 26, 2019, the United States filed a Response contending that Movant's § 2255 Motion is without merit. (ECF No. 7.) For the reasons stated below, Movant's § 2255 Motion is **DENIED**.

I.    **BACKGROUND**

    A.    **Criminal Case No. 2:15-cr-20280-SHM-01**

On December 3, 2015, a federal grand jury in the Western District of Tennessee returned a one-count indictment against Coleman. (Criminal ("Cr.") ECF No. 3.) Coleman was charged with conspiracy to possess cocaine with intent to distribute, in violation of 18 U.S.C. § 846. (*Id.*) On March 28, 2016, the United States filed an Information pursuant to 21 U.S.C. § 851. (Cr. ECF No. 22.)

On June 13, 2016, Coleman proceeded to trial. (Cr. ECF No. 54.) On June 14, 2016, Coleman pled guilty to Count One of the indictment. (Cr. ECF 56, 58-59.) The factual basis for the charge was summarized by the United States at Coleman's change of plea hearing:

> Had this matter proceeded to trial, the United States would have shown beyond a reasonable doubt that during 2014 the FBI began investigating a group of Gangster Disciples in the Tipton County area through wire intercepts, surveillance, drug buys, interviews.
>
> They identified Mr. Coleman. Eventually they approached Mr. Coleman on November 3rd of 2015. After receiving consent to search, they found individually wrapped cocaine. They found five .45 caliber bullets; a scale; baggies; and $1,011.
>
> Mr. Coleman eventually gave a statement of admission and he told the agents with the FBI that on a regular basis he was obtaining a half ounce to an ounce of cocaine from an unidentified individual in Moscow, Tennessee, and that the purpose of obtaining it was to distribute it and that over the course of the conspiracy the evidence would have shown that this totaled over 500 grams of cocaine.
>
> Lastly, the proof would have shown that the cocaine seized was, in fact, cocaine and that this occurred in the Western District of Tennessee.

(Cr. ECF No. 89 at 463-64.)

The PSR calculated a criminal history category of VI and a total offense level of 37, resulting in an effective Guidelines range of 360 months to life in prison. (Cr. ECF No. 66, PSR ¶¶ 31, 47, 77.) Movant's total offense level included a two-level enhancement for possession of a dangerous weapon pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2D1.1(b)(1). On September 19, 2016, Coleman provided the following written statement to the probation officer:

> I KEVIN COLEMAN, on or about November 3, 2015 conspired with others to possess with the intent to distribute at least 43.165 grams of cocaine. I understand this conduct is in violation of federal law as stated in Title 21 U.S.C. § 846. I fully acknowledge and accept responsibility for my actions in this matter.

(Addendum to PSR, Cr. ECF No. 66-1.) The probation officer recalculated the total offense level with full credit for acceptance of responsibility, resulting in a total offense level of 34 and an effective Guidelines range of 262 to 327 months in prison. (*Id.*)

On September 19, 2016, defense counsel filed a position paper objecting to the statement that Coleman was required to have a gun with him or have another armed gang member accompany him at all times (¶ 6), the drug calculation (¶ 17), the adjusted offense level based on the drug calculation (¶28), and the two-level enhancement for possession of a weapon (¶ 24). (Cr. ECF No. 63.) Counsel requested a downward variance, contending that Coleman's classification as a career offender grossly overstated his criminal history. (*Id.*)

On November 14, 2016, the Court conducted a sentencing hearing. (Cr. ECF No. 88.) After a discussion with Coleman during the hearing, counsel withdrew the objection. (Cr. ECF No. 88 at 6.) The parties discussed the objection to the application of the enhancement under U.S.S.G. §2D1.1(b)(1) and agreed that Coleman had carried a firearm when he made cocaine purchases. (*Id.* at. 15-16.) Coleman provided a replacement statement of acceptance that admitted

that he had conspired with others as stated in Count One of the indictment to possess with the intent to distribute over 500 grams of cocaine, but that his direct involvement was 43.165 grams of cocaine. (*Id.* at 19-20, Cr. ECF No. 74.) The parties agreed that the marijuana equivalent of the drugs was 100 kilograms and that the adjusted base offense level was 24, resolving the objections to paragraphs seventeen and twenty-eight. (Cr. ECF No. 88 at 21-28.) Coleman received full credit for acceptance of responsibility. (*Id.* at 29-30.) The Court determined that Coleman's total offense level was 34 and the applicable Guidelines range became 262 to 327 months. (*Id.* at 30-31.) The Court agreed with the parties that a downward variance was appropriate and sentenced Coleman to 210 months in prison. (*Id.* at 34-49, Cr. ECF Nos. 73, 75.) Coleman appealed. (Cr. ECF No. 77.) The United States Court of Appeals for the Sixth Circuit affirmed Coleman's sentence. *United States v. Coleman*, 705 Fed. App'x 454 (6th Cir. Dec. 4, 2017).

    B.    **Case Number 19-2092-SHM-tmp**

On February 6, 2019, Coleman filed this § 2255 Motion alleging:

(1)    Counsel provided ineffective assistance by failing to challenge the career offender enhancement under *Mathis v. United States*, 136 S. Ct. 2243 (2016). (ECF No. 1 at 4, ECF No. 1-1 at 4-5.)

(2)    Counsel provided ineffective assistance by failing to challenge the two-point gun enhancement under U.S.S.G. §2D1.1(b)(1). (ECF No. 1 at 5, ECF No. 1-1 at 5-7.)

(3)    Counsel failed to challenge the indictment's failure to give fair notice of all the elements. (ECF No. 1 at 7, ECF No. 1-1 at 7-9.)

(4)    Counsel failed to contest the drug quantity attributed to Movant. (ECF No. 1 at 8, ECF No. 1-1 at 9-10.)

Coleman's pleadings appear to raise these issues as freestanding claims and as issues of ineffective assistance of counsel. Issues One through Four are procedurally defaulted and noncognizable

when considered as freestanding claims. The Court will address the issues only as claims of ineffective assistance.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

---

[2]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

---

court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

8

*Richter*, 562 U.S. at 105.

The two-part test stated in *Strickland* applies to challenges to guilty pleas based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Padilla*, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

### III.    ANALYSIS

Coleman has not met the prejudice prong for his claims of ineffective assistance because he does not allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. He does not deny his guilt. He requests that the sentencing enhancements be vacated and that his sentence otherwise be vacated or corrected. (ECF No. 1 at 13.)

#### A.    Issue One

Coleman contends that counsel should have challenged the career offender enhancement under U.S.S.G. § 4B1.1 "because his prior State of Tennessee marijuana conviction [ ]is a class VI substance [and] does not qualify as a federal drug offense and [ ] pursuant to Tenn. Code Ann. § 39-17-417 the statute is divisable, overinclusive, overly broad and carries a greater swath of conduct than the law allows" under *Mathis*. (ECF No. 1-1 at 4.) Coleman also alleges that he

9

was not imprisoned for "more than a year as federal law requires." (*Id.*) The United States responds that counsel challenged the use of the conviction on direct appeal because Coleman did not serve a sentence in excess of one year (ECF No. 7 at 6) and that counsel had no basis for contending that Tenn. Code Ann. § 39-17-417 is not a controlled substance offense under *Mathis*. (*Id.* at 8.)

Noting that the commentary to U.S.S.G. § 4B1.2 provides that a "prior felony conviction is "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year regardless of the actual sentence imposed", the Sixth Circuit determined that the district court properly used Coleman's marijuana conviction as a predicate offense for career offender status, regardless of his actual sentence. *Coleman*, 705 Fed. App'x 454, 455 (citing U.S.S.G. § 4B1.2 comment. (n.1).)

Under *Mathis*, the elements of Coleman's prior state court conviction are compared to the elements of a "controlled substance offense" under the Sentencing Guidelines. A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense. *See* U.S.S.G. § 4B1.1. The Guidelines define a "controlled substance offense" that can serve as a predicate offense for enhancement under U.S.S.G. § 4B1.1 as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

10

> To determine whether a prior conviction qualifies as a controlled substance offense under the Sentencing Guidelines, a sentencing court applies the "categorical approach" and compares the statutory elements of the offense in question to the elements of a controlled substance offense as defined in section 4B1.2(b). *See United States v. Woodruff*, 735 F.3d 445, 449 (6th Cir. 2013). "If, however, the categorical approach fails to be determinative" because a statute is divisible, "a sentencing court may look to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented,' in order to determine whether the prior crime qualifies as a controlled substance offense." *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). This latter approach is referred to as the "modified" categorical approach. *See Mathis*, 136 S. Ct. at 2249. In *Mathis*, the Supreme Court held that a statute is divisible—and thus, the modified categorical approach may be applied—only if a statute lists alternative elements, rather than alternative means, of committing an offense. *See id.* at 2253–54.

*Franklin v. United States*, 2018 WL 3064562, at *2 (6th Cir. 2018).

Tennessee Code Annotated § 39-17-417 states that it is a felony offense for a defendant to knowingly (1) manufacture, deliver, or sell a controlled substance, or (2) possess a controlled substance with the intent to manufacture, deliver, or sell it. Tenn. Code Ann. § 39-17-417(a), (c). The Guidelines define a controlled substance offense as a felony offense under federal or state law "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). When Coleman was sentenced, the categorical approach was properly applied to § 39-17-417. Under Sixth Circuit precedent at that time, the sale of marijuana under § 39-17-417 fit within the § 4B1.2(b) reference to distribution of a controlled substance. The Sixth Circuit has held:

> [W]e have always treated a violation of § 39–17–417 as a categorical controlled substance offense. *See* [*United States v.*] *Ryan*, 407 Fed. Appx. at 31–32; *James v. United States*, 217 Fed. Appx. 431, 439 (6th Cir. 2007); *United States v. Hughley*, 192 Fed. Appx. 447, 455 (6th Cir. 2006); *United States v. Holloway*, 142 F.3d 437,

> 1998 WL 109987 at *1–2 (6th Cir. 1998) (per curiam) (unpublished). Defendant argues that we have it wrong, pointing out that § 39–17–417 proscribes possession with intent to "manufacture, deliver or sell"—terms that do not appear in the Guidelines' definition of "controlled substance offense." Defendant reads too much into these lexical differences. Our inquiry is not whether the elements of the crime contain the same words as the Guidelines' definition—it is "whether the elements of the offense are of the type that would justify its inclusion within the definition of a controlled-substance offense." [*United States v.*] *Woodruff*, 735 F.3d at 449 (emphasis added, quotation marks omitted). There is no meaningful distinction between possessing narcotics with intent to "manufacture, deliver or sell," and possessing them with intent to "manufacture, import, export, distribute, or dispense." Section 39–17–417 is a categorical controlled substance offense.

*United States v. Douglas*, 563 F. App'x 371, 377-78 (6th Cir. 2014).

*Mathis* did not change the applicability of the enhancement to Coleman's sentence or announce a new rule of law. *In re Conzelmann*, 872 F.3d 375, 376–77 (6th Cir. 2017). The Sixth Circuit has affirmed its declaration in *Douglas* that the categorical approach is correctly applied to § 39–17–417, finding "no reason that *Mathis* would change that result, since *Mathis* applies in only the *modified* categorical context." *Franklin v. United States*, 2018 WL 3064562, at *2 (emphasis in original); *see also Shropshire v. Quintana*, No. 17-6164, 2018 WL 4908140, at *2 (6th Cir. July 17, 2018) ("We have held, post-*Mathis*, that violations of Tennessee Code Annotated § 39-17-417, which prohibits possession of a controlled substance with the intent to sell, count as predicate offenses under the guidelines.") (citing *United States v. Merriweather*, Nos. 17-5077/5097/5118/119, 2018 WL 1517188, at *12–13 (6th Cir. Mar. 28, 2018), and *United States v. Alexander*, 686 F. App'x 326, 327–28 (6th Cir. 2017)). The Sixth Circuit authority cited above is clear that the status of convictions under § 39-17-417 as predicate offenses under the career offender Guideline did not change after *Mathis*.

Counsel does not perform deficiently by failing to raise a frivolous issue or objection at sentencing or by failing to raise a meritless issue on appeal. Coleman has failed to demonstrate that counsel's performance was deficient. Issue One is **DENIED**.

### B. Issue Two

Coleman contends that counsel provided ineffective assistance by failing to challenge the two-point enhancement for possessing a firearm "because there was [sic] no guns found or seized during the course of Coleman's investigation nor were any firearms seized during his arrest at his residence that was shared with others." (ECF No. 1-1 at 5.) The United States responds that counsel had no basis for challenging the enhancement "because Coleman admitted that he carried guns to make cocaine purchases." (ECF No. 7 at 9.)

Counsel filed Coleman's objection to the statement in the PSR at ¶ 6 that Coleman, as the Chief Enforcer/Assistant Chief Enforcer for the Covington Region of the Gangster Disciples was required to have a gun or another armed gang member with him at all times. (Cr. ECF No. 63.) After a discussion with Coleman at sentencing, counsel withdrew the objection during the sentencing hearing. (Cr. ECF No. 88 at 6.) The parties discussed the objection to the application of the enhancement under U.S.S.G. §2D1.1(b)(1) and agreed that Coleman carried a firearm when he made cocaine purchases. (*Id.* at. 15-16.)

When Coleman advised the Court of his decision to plead guilty without the benefit of a plea agreement, the Court asked Coleman if he understood that if he did not tell the truth, he could be prosecuted for perjury. (Cr. ECF No. 89 at 65, 68.) Coleman stated that he understood. (*Id.*) Had Coleman pursued the objection he risked losing the three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

The decision to withdraw the objection was based on counsel's well-reasoned advice. It was a reasonable strategic decision. Counsel had no duty to pursue frivolous objections. Counsel did not perform deficiently. Issue Two is without merit and is **DENIED**.

### C. Issue Three

Coleman contends that counsel performed deficiently by failing to challenge the indictment's failure "to list any coconspirators and only mentions 'Confidential So[u]rces' working as agents of law enforcement who cannot be deemed part of a conspiracy." (ECF No. 1-1 at 7.) Coleman also contends that counsel should have challenged the indictment's failure "to give notice of the actual amount of drugs each coconspirator alle[]gedly possessed during the conspiracy." (*Id.*) The United States responds that the indictment in this case was sufficient. (ECF No. 7 at 11-12.)

Coleman's indictment stated:

> Beginning at a time unknown to the grand jury, but at least up until on or about November 3, 2015, in the Western District of Tennessee, the defendant,
> KEVIN COLEMAN<br>A/K/A "BOOGER"
> did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with other persons both known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute a mixture and substance containing more than 500 grams of a detectable amount of Cocaine, a Schedule II controlled substance as classified by Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 846.

(Cr. ECF No. 3.)

"An indictment is sufficient 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Mohney*, 949 F.2d 899, 903 (6th Cir. 1991) (quoting *Hamling v. United States*, 418 U.S.

87, 117 (1974)). It is well settled in this circuit that the Government is not required to furnish in a bill of particulars the names of coconspirators or other persons present when the defendants allegedly participated in the conspiracy. *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991); *see also United States v. Page*, 575 Fed. Appx. 641, 643 (6th Cir. 2014) (observing that "the government is not obliged to provide the names of a defendant's alleged co-conspirators"). In this respect,

> [a] defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

*Id.* (internal citations omitted) (quoting *United States v. Piccolo*, 723 F.2d 1234, 1239 (6th Cir. 1983)). The Government is not required to reveal the names of unindicted coconspirators. *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004). The Sixth Circuit has observed that conspiracy indictments typically charge "others known and unknown to the grand jury;" that language does not render an indictment unconstitutionally vague. *See United States v. Pingleton*, 216 Fed. App'x 526, 529 (6th Cir. 2007).

The law is also clear that, "[w]here a defendant is part of a 'jointly undertaken criminal activity' involving drugs, 'the defendant is accountable for all quantities of contraband with which [he] was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [he] jointly undertook.'" *United States v. Begley*, 602 Fed. App'x 622, 626 (6th Cir. 2015) (quoting U.S.S.G. § 1B1.3 cmt. 24). A "jointly undertaken

criminal activity" includes a conspiracy. *United States v. Watson*, 620 Fed. App'x 493, 513 (6th Cir. 2015); U.S.S.G. § 1B1.3 cmt. 3 (2016).

The indictment charged Coleman with conspiracy to possess more than 500 grams of cocaine with intent to distribute. (Cr. ECF No. 3.) Coleman pled guilty to conspiracy to possess more than 500 grams of cocaine with intent to distribute. (Cr. ECF No. 59.) The United States related the factual basis of the charge at the plea hearing. (Cr. ECF No. 89 at 85-86.) Under oath, Coleman agreed that the facts were correct. (*Id.* at 87.) At sentencing Coleman provided a statement of acceptance admitting that he had conspired with others to possess more than 500 grams of cocaine with the intent to distribute, but that his direct involvement was 43.165 grams of cocaine. (*Id.* at 19-20, Cr. ECF No. 74.)

The indictment was constitutionally sufficient. Coleman cannot establish prejudice from the indictment's failure to state the drugs attributable to each coconspirator. He admitted under oath that he conspired with others to possess more than 500 grams of cocaine with the intent to distribute. Counsel does not perform deficiently by failing to raise frivolous objections and by failing to raise frivolous issues on appeal. Issue Three is **DENIED**.

    D.    <u>**Issue Four**</u>

Coleman contends that counsel should have insisted that Coleman was innocent of conspiracy to possess more than 500 grams of cocaine with intent to distribute and have argued that less than 50 grams of cocaine was attributable to him. (ECF No. 1-1 at 22-23.) The United States responds that this issue is without merit. (ECF No. 7 at 51.)

The United States is correct. Coleman admitted that he conspired to possess more than 500 grams of cocaine with intent to distribute. He also admitted that his direct involvement was 43.165 grams of cocaine. Counsel was not ineffective for failing to deny facts that Coleman had admitted.

Coleman was sentenced based on the low end of the minimum quantity of cocaine, 500 grams of cocaine, a hundred kilograms of marijuana equivalent, and .74 grams of hydrocodone, 4.958 kilograms of marijuana equivalent, a total of 104.958 kilograms. Coleman's base offense level was 24. Had Coleman been sentenced based on 43.165 grams of cocaine or 30.473 kilograms of marijuana equivalent, Coleman's base offense level would have been 16. Using either quantity, Coleman's total offense level would not have been affected because he was a career offender, which resulted in an adjusted offense level of 37.

Coleman, nevertheless, questions whether he can properly be held accountable for all the drugs trafficked by the conspiracy or only for the quantity with which he was directly involved. In *United States v. Robinson*, 547 F.3d 632, 637-40 (6th Cir. 1998), the Court of Appeals held that, where a defendant is charged under § 846, the drug quantity at issue is the quantity attributable to the conspiracy. In *United States v. Young*, 847 F.3d 328 (6th Cir. 2017), a defendant who had been convicted of violating §§ 841(a)(1) and 846 and was sentenced to a mandatory term of life imprisonment argued that he should be held responsible only for the drug quantity personally attributable to him. The Court of Appeals denied relief on the basis of *Robinson*. *Id.* at 366. In response to the Government's argument that *Robinson* might be inconsistent with later decisions, the Court of Appeals concluded that, "regardless of which approach we apply to [defendant's] sentence, the outcome is the same." *Id.* at 367. The Court of Appeals said "there is no need for us to reconcile these cases at this time." *Id.* Even if the drug quantity were individually determined, the district court did not err in sentencing the defendant to life imprisonment. *Id.* In *United States v. Gibson*, No. 15-6122, 2016 WL 6839156 (6th Cir. Nov. 21, 2016), a Sixth Circuit panel held, on the basis of *Robinson*, that a district court did not err in sentencing a defendant to a mandatory minimum sentence under § 846 without an individualized determination of the drug

17

quantity for which he could be held responsible. The Court of Appeals explained that, "[h]ere, too, the relevant quantity determination is the quantity involved in the conspiracy, which Gibson admitted was fifty grams or more of methamphetamine. That admission triggers the mandatory-minimum sentence in our circuit, regardless of whether Gibson could reasonably foresee the drug quantity." *Id.* at *1. On rehearing en banc, the Court of Appeals split evenly and, therefore, the district court's sentence was affirmed. *United States v. Gibson*, 874 F.3d 544 (6th Cir. 2017) (en banc). When Coleman pled guilty, there was no controlling precedent in this circuit holding that a defendant convicted of violating 21 U.S.C. § 846 was entitled to an individualized determination of the drug quantity attributable to him.

In evaluating a claim of ineffective assistance, a court must "assess counsel's performance based on counsel's perspective at the time, considering all the circumstances, rather than in the harsh light of hindsight." *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (internal quotation marks and citations omitted), *cert. denied*, 139 S. Ct. 1573 (2019). "[C]ounsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Id.* at 192; *see also Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (same); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) ("nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"). In *Snider*, the Court of Appeals held that trial counsel was not ineffective when she relied on settled law at the time of the sentencing hearing. *Id.* at 192-93. Here, as previously stated, there was no clearly established law in this circuit favoring Coleman's position that he was entitled to an individualized determination of his accountability. Counsel was not ineffective for failing to make a frivolous argument about drug quantity or failing to pursue an issue without supporting precedent in this circuit. Issue Four is **DENIED**.

IV.     **CONCLUSION**

The Motion together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Coleman's conviction and sentence are valid. Therefore, his Motion is **DENIED**. Judgment shall be entered for the United States.

V.      **APPELLATE ISSUES**

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). In this case, for the reasons previously stated, Movant's claims lack substantive merit. He cannot present a question of some substance about which reasonable jurists could differ. The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*,

117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**. If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 3d day of March 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE